IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KAYLA M. LEE**                                                                                    **PLAINTIFF**

**V.**                                                **CIVIL ACTION NO. 1:19CV678 LG-LGI**

**ANDREW SAUL,**
**COMMISSIONER OF SOCIAL SECURITY**                                      **DEFENDANT**

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Kayla Lee appeals the final decision denying her application for a period of disability and disability insurance benefits ("DIB"), and social security income (SSI). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge ("ALJ"). Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the undersigned recommends that this matter be affirmed.

In 2016, Plaintiff filed applications for DIB and SSI alleging a disability onset date of March 1, 2016, due to numerous medical conditions including fibromyalgia, spinal stenosis, conversion disorder, scoliosis, degenerative disc disease, cervical disc disease, chronic pain syndrome, fatigue, and insomnia, neuropathy, migraine headaches, hypermobility related to Ehlers-Danlos syndrome, right shoulder tendonitis, arthritis in right hip, anxiety, irritable bowel syndrome, pancreatitis, endometriosis, and seizures. Plaintiff is a high school graduate and was 24 years old on her alleged onset date. She has past work experience as a phlebotomist, bank teller, and cashier. Following agency denials of her application, the ALJ rendered an unfavorable decision finding that she had

not established a disability within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's request for review.  She now appeals that decision.

At step one of the five-step sequential evaluation,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  At step two, the ALJ found that Plaintiff had the following severe impairments:  conversion disorder, anxiety disorder, major depressive disorder, post-traumatic stress disorder, chronic pain syndrome, fibromyalgia, Ehlers-Danlos syndrome, convulsion/seizure disorder, neuropathy, irritable bowel syndrome, right rotator cuff tear with decreased abduction in the right shoulder and interstitial cystitis.  However, at step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any listing. At step four, the ALJ determined that Plaintiff has the residual functional capacity to perform light work, except:

> She can no more than occasionally climb ramps and stairs. She can never climb ladders, ropes or scaffolds.  She can no more than occasionally balance, stoop, kneel, crouch and crawl.  She can never perform overhead reaching with the right upper extremity.  She can never work at unprotected heights or around dangerous moving mechanical parts. She can concentrate, persist and maintain pace in order to perform simple, routine, repetitive tasks. She can have occasional interaction with supervisors, co-workers, and the general public.

Relying on vocational expert testimony at step five, the ALJ found that Plaintiff can perform work as a housekeeper, merchandise marker, or mail clerk.

---

[1] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

## **Standard of Review**

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo,* or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## **Discussion**

Plaintiff testified at the administrative hearing that a wide range of impairments and symptoms have prevented her from working since 2014, including fibromyalgia, conversion disorder and migraines.  She has three young children and can change diapers, read to them, help with homework, and take her oldest to school, but she relies on her husband and mother-in-law for childcare when she doesn't feel well.  Chronic pain and fatigue make it difficult to concentrate and attend to her personal needs.  However, she can prepare simple meals, do laundry with assistance, and shop in stores. She is not, however, able to lift a gallon of milk, walk long distances, or perform postural maneuvers.

Upon considering Plaintiff's testimony and over 2000 pages of administrative record, the ALJ concluded that the objective medical evidence did not support the claimant's loss of functioning, but it did support limiting Plaintiff to a range of light work. In a lengthy and detailed opinion, the ALJ concluded that the primary conditions limiting Plaintiff to light work were her history of Ehlers-Danlos syndrome, fibromyalgia, conversion disorder and chronic pain syndrome. Though some of these symptoms were observable upon physical examination, including a decreased sensation and tenderness upon palpation, substantial evidence established that there was a large amount of psychogenic overlay to her symptoms, and her physical examinations were largely normal.

On appeal, Plaintiff assigns two errors: (1) the ALJ failed to consider that the frequency of her absences from work for medical appointments would preclude her from working; and, (2) the ALJ failed to proper evaluate the medical opinion evidence. The Commissioner counters that the proper standards were applied, and substantial evidence supports the ALJ's decision. Given the evidence in this case, the undersigned submits that there is no basis for reversal or remand.

**1.**

Although Plaintiff asserts that the ALJ failed to conduct a proper analysis of her treating physician's opinion, her central argument on appeal is that the ALJ's residual functional capacity determination and corresponding hypothetical fail to account for her need to be absent from work for medical appointments. In support, Plaintiff cites

4

primarily to her diagnosis of Ehlers-Danlos syndrome, a "rare genetic condition typified by joint instability and chronic musculoskeletal pain."[2]  *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 926 (8th Cir. 2016).   However, the ALJ recognized that Plaintiff alleged disability primarily to Ehlers-Danlos syndrome in assessing her residual functional capacity. She explained as follows:

> The claimant has also been assessed with Ehlers-Danlos syndrome – hypermobility type, scoring greater than four on the Beighton scale for hypermobility syndrome. She demonstrates very lax joints and skin and bruises easily. The claimant has treated with numerous joint injections. However, as noted above, the longitudinal record of physical examinations is generally within normal limits and imaging studies are largely unremarkable. As such, the claimant's history of Ehlers-Danlos syndrome is fully accommodated by limiting the claimant to a range of light work described in the residual functional capacity assessment, with no more than occasional postural maneuvers and no work around unprotected heights or dangerous moving mechanical parts.

Though Plaintiff alleges the ALJ's consideration of her Ehlers-Danlos diagnosis was insufficient, it is not the presence of a medical condition, but rather its limitations, which inform whether a claimant is disabled.  *See Christmas v. Astrue*, No. 3:09-CV-00005, 2010 WL 1027492, at *9 (W.D. Va. Mar. 17, 2010) ("The ALJ is correct in stating that "[t]he validity of the Ehlers–Danlos diagnosis is not being questioned," and that it is "the functional consequence of the diagnosis and the claimant's medical signs and findings . . . that [he] must evaluate and decide.").

---

[2] Ehlers–**Danlos** Syndrome "is a group of inherited disorders that affect connective tissues – skin, joints, or blood vessel walls – and cause overly flexible joints and stretchy, fragile skin." *Ehlers–Danlos Syndrome*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/ehlers-**danlos**-syndrome/symptoms-auses/syc-20362125 (last visited November 10, 2020).

Still, Plaintiff claims that the ALJ erred in failing to consider the frequency of her medical appointments for Ehlers-Danlos syndrome and other impairments in formulating her residual functional capacity. However, the undersigned submits that such an argument rests on too speculative of a foundation to warrant reversal or remand here. Many of Plaintiff's medical appointments were for the purpose of eliminating other diagnoses before a definitive Ehlers–Danlos diagnosis was made. Further, as Plaintiff acknowledges in her memorandum brief, many of her medical appointments were to address pregnancy complications attributable to Ehlers-Danlos syndrome.[3] Pregnancy is not a chronic condition that would require ongoing medical appointments after birth. Accordingly, any extrapolation from the medical records of how many days she would miss from work for this reason would have been improper. *See Banwart v. Colvin*, No. 4:15-CV-03258, 2017 WL 773710, at *2 (S.D. Tex. Feb. 8, 2017), *report and recommendation adopted,* No. 4:15-CV-03258, *Banwart v. Colvin*, No. 4:15-CV-03258, 2017 WL 775864 (S.D. Tex. Feb. 27, 2017) (citing *Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) ( holding "the ALJ did not err by failing to consider plaintiff's absenteeism" when "plaintiff's current extrapolation of how many days she must have missed . . . assumes she was required to miss entire days of work for each appointment."); *Edwards v. Comm'r of Soc. Sec.*, No. 1:17-CV-30, 2018 WL 442328, at *5 (S.D. Ohio

---

[3] According to the Mayo Clinic website, "Ehlers-Danlos syndrome can have serious potential complications in pregnancy." *Ehlers–**Danlos** Syndrome*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/ehlers-**danlos**-syndrome/symptoms-auses/syc-20362125 (last visited November 10, 2020).

Jan. 16, 2018), *report and recommendation adopted,* No. 1:17CV030, 2018 WL 705887 (S.D. Ohio Feb. 5, 2018).[4]

The undersigned notes that Plaintiff points to the medical source statements from her treating specialist, Dr. Lynn Bell, indicating that she would miss more than 4 days of work per month because of her impairments or treatments. However, the ALJ explicitly rejected these opinions as unsupported and inconsistent with the record as a whole. Further, as set forth below, Dr. Bell's 2018 fibromyalgia medical source statement indicates that Plaintiff was seen every 2-3 months and her prognosis was "fair," both of which belie her assertions that excessive absenteeism would preclude her from working. Moreover, Plaintiff does not point to evidence establishing that her medical appointments would require a full day's absence from work, "or that appointments could not be scheduled around hours of employment." *Chaney v. Comm'r of Soc. Sec.*, No. 5:18 CV 2769, 2020 WL 789189 (N.D. Ohio Feb. 18, 2020); *see also Pryor v. Comm'r of Soc. Sec.*, No. 14-13325, 2015 WL 12683977, at *7 (E.D. Mich. Aug. 21, 2015), *report and recommendation adopted,* No. 14-13325, 2015 WL 6735336 (E.D. Mich. Nov. 4, 2015) ("Pryor has not established any reason to think that he is unable to attend physical therapy sessions after work, on the weekends, during lunch, or on some other schedule.");

---

[4] Plaintiff also reported in March 2017 that she had stopped taking most medications even though they were beneficial because of side effects and a desire to manage her health conditions with minimal medication. The extent to which this preference may have impacted the frequency of her appointments or exacerbated her pain is unclear, but all these factors belie her claim that her medical appointments would occur with such frequency as to constitute a work-related limitation.

*Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017)) ("[W]e are unpersuaded by [claimant's] argument that the excessive number of medical appointments she attended rendered her disabled." *Cindy E. v. Berryhill*, No. C18-5362-RSM-MAT, 2019 WL 3417087, at *4 (W.D. Wash. Feb. 6, 2019), *report and recommendation adopted sub nom. Estrada v. Comm'r of Soc. Sec.*, No. C18-5362 RSM, 2019 WL 2710519 (W.D. Wash. June 28, 2019).

    Notwithstanding the foregoing, Plaintiff asserts that the ALJ failed to consider the vocational expert's testimony that a hypothetical claimant who was off task for 15% of the workday due to frequent unscheduled breaks, and absent for more than 4 days per month, would be precluded from maintaining employment. However, an ALJ's residual functional capacity assessment and corresponding hypothetical need only incorporate the limitations recognized by the ALJ. *Bowling*, 36 F.3d at 436. Here, the ALJ presented a hypothetical to the vocational expert that inquired whether an individual with the claimant's residual functional capacity could perform jobs that exist in significant numbers in the national economy. In response, the vocational expert testified that Plaintiff could perform the work identified.

    The undersigned does not minimize the fact that Plaintiff will need ongoing treatment and physical therapy. However, a disability claimant must show that he is so functionally impaired by his impairments, and that his symptoms are of such severity and frequency, that that he is precluded from engaging in substantial gainful activity within the limits of his residual functional capacity. *Frank*, 326 F.3 619; *Moore v. Barnhart*, 182 F. App'x 321, 323 (5th Cir. 2006). No such showing has been made here.

**2.**

As her second point of error, Plaintiff alleges that the ALJ failed to conduct an analysis of her treating physician's opinion, pursuant to 20 C.F.R. § 404.1527(c). In 2017, Dr. Bell submitted a medical source statement indicating that he had seen Plaintiff 1-3 times per month, and that she could lift 25 pounds occasionally, 10 pounds frequently, sit and stand for no more than 2 hours, and, occasionally perform postural maneuvers. He also opined that she would miss more than 4 days of work per month due to her impairments or treatment. In 2018, Dr. Bell completed a fibromyalgia medical source statement assigning essentially the same lifting, sitting and standing limitations, with an added finding that Plaintiff would need to walk every 30 minutes. He also opined that pain would frequently interfere with Plaintiff's ability to maintain attention and concentration, and that she would need to take unscheduled 30-minute breaks every day. These limitations notwithstanding, Dr. Bell opined that Plaintiff's prognosis was fair.

In evaluating the evidence, the ALJ assigned both of his medical source statements partial weight, explaining as follows:

> . . . . [Dr. Bell's 2017] opinion that the claimant is limited to light work with no more than occasional postural maneuvers is largely consistent with the medical evidence of record showing some abnormalities evident upon examination such as tenderness upon palpitation and some evidence of a psychogenic component to claimant's pain. However, his opinion with regard to the length of time the claimant can sit and stand in an eight-hour workday is largely not consistent with other physical examinations that are generally within normal limits and imaging studies are largely unremarkable.
>
> . . . . [Dr. Bell's 2018] opinion that the claimant can occasionally lift up to twenty pounds occasionally and ten pounds frequently is consistent with light work and consistent with the overall medical evidence of record for

9

    the same reasons as stated in the above analysis of her September 2017 opinion. However, his opinion with regard to the length of time the claimant can sit and stand in an eight-hour workday*, her need for unscheduled breaks, and her absence from work is largely not consistent with the overall record.* For example, physical examinations are generally within normal limits and imaging studies are largely remarkable.[5]

It was not unreasonable for the ALJ to weigh Dr. Bell's examination notes and findings against his conclusions. *Salmond v. Berryhill*, 892 F.3d 812 (5th Cir. 2018). Plaintiff objects to the ALJ's conclusions but she does not rebut the ALJ's well-reasoned analysis or good cause with substantial evidence to the contrary. Instead, Plaintiff asserts that the ALJ failed to conduct a 20 C.F.R. § 404.1527(c)[6] analysis of Dr. Bell's opinions.

    The Fifth Circuit has long held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The statutory analysis requires the ALJ to consider the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, the extent to which his opinions were supported by the medical record, the consistency of his opinion with the record as a

---

    [5] Emphasis added.

    [6] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017. For claims filed on that date and thereafter, 20 C.F.R. § 404.1520c applies, and it provides, *inter alia*, that no specific evidentiary weight is to be given to medical opinions from medical sources.

whole, and the specialization of the physician. *Id.* at 456. The ALJ is not required, however, to consider each of these factors when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005); *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017); *Qualls v. Astrue*, 339 F. App'x 461, 466 (5th Cir. 2009)

In this case, Plaintiff underwent a physical consultative examination in April 2017. During the examination, Plaintiff reported that she could not work because of neck and back pain, SI joint dysfunction, Ehlers-Danlos syndrome, right arm limitations, and a history of fibromyalgia and spinal stenosis. Upon examination, the examiner observed, *inter alia*, that Plaintiff had limitations in her range of motion but excellent strength in her upper extremities and a normal gait. Based on his examination findings, Dr. Hoover issued a narrative opinion indicating, in relevant part, that Plaintiff could perform medium work with no more than occasional postural maneuvers and a reaching limitation on the right side. Contrary to Dr. Bell's assessments, Dr. Hoover indicated that Plaintiff could sit, stand, and walk up to 8 hours of a workday. Though assigned great weight, the ALJ adopted only the portions of Dr. Hoover's assessment that were consistent with the record as whole, "afford[ing] the claimant additional exertional limitations due to some abnormalities evident upon examination such as tenderness upon palpation and some evidence of a psychogenic component to the claimant's pain."

In addition to Dr. Hoover's assessment, the ALJ was presented with evidence from Geralyn Datz, Ph.D., who conducted a psychological pain interview and evaluation at Dr.

11

Bell's request in 2016. Though Plaintiff does not challenge the ALJ's assessment of her mental limitations on appeal, Dr. Datz's impressions are not without relevance, particularly to Plaintiff's excessive absences claim. Dr. Datz's diagnostic impression was that Plaintiff had a conversion disorder, and that cognitive factors "play a significant role in the claimant's pain experience." She expressly stated that she did not support Plaintiff's disability application and that Plaintiff was "capable of work."

Although Dr. Hoover's and Dr. Datz's opinions predate Dr. Bell's opinions, the record does not establish limitations beyond those assessed in the ALJ's residual functional capacity determination. In the end, Plaintiff's "argument comes down to the weight the ALJ place[d] on [the expert opinions]—and it is the ALJ's task, not ours, to weigh evidence." *Garcia v. Colvin*, 622 F. App'x 405, 408–409 (5th Cir. 2015) (unpublished). Because the record contains reliable medical evidence controverting Dr. Bell's conclusions in this case, the ALJ had no obligation to perform a detailed analysis before rejecting his opinions. The ALJ properly credited the limitations she found most supported by the record. The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ. In the formulation of Plaintiff's residual functional capacity here, the ALJ gave a clearly articulated and a particularly well-reasoned analysis of Plaintiff's symptoms, including pain, and the extent to which these symptoms were consistent with the objective medical evidence. The 2000–page record in this case and the ALJ's detailed opinion provide a clear picture as to how she reached this determination.

**Conclusion**

In sum, based upon consideration of the evidentiary record as a whole, the ALJ determined that Plaintiff failed to establish that her impairments were of sufficient severity to establish disability. The undersigned's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.

**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Rule 72(a)(3) of the Local Uniform Civil Rules of the United States District Courts for the Southern District of Mississippi, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections. Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted on February 5, 2021.

                                                                             s/ LaKeysha Greer Isaac  
                                              UNITED STATES MAGISTRATE JUDGE