# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

**KAYLA M. LEE**                                          **PLAINTIFF**

**v.**                                          **CAUSE NO. 1:19CV678-LG-LGI**

**COMMISSIONER OF SOCIAL**
**SECURITY ADMINISTRATION**                              **DEFENDANT**

### ORDER ADOPTING REPORT AND RECOMMENDATION OF
### UNITED STATES MAGISTRATE JUDGE AND GRANTING
### THE COMMISSIONER'S MOTION TO AFFIRM

**BEFORE THE COURT** are the [17] Report and Recommendation entered
by United States Magistrate Judge LaKeysha Greer Isaac on February 5, 2021 and
the [13] Motion to Affirm the Commissioner's Decision filed by the Commissioner of
the Social Security Administration. The plaintiff, Kayla M. Lee, has filed an [18]
Objection to the Report and Recommendation and a response in opposition to the
Motion to Affirm. After reviewing the submissions of the parties, the record in this
matter, and the applicable law, the Court finds that decision of the Commissioner
should be affirmed.

## BACKGROUND

Pursuant to 42 U.S.C. § 405(g), Lee seeks judicial review of the
Commissioner's decision to deny her applications for a period of disability,
Disability Insurance Benefits, and Supplemental Security Income. She alleges a
disability onset date of March 1, 2016 due to numerous medical conditions. She was
twenty-four years old at the alleged onset date. In this appeal, Lee raises the
following two issues:

(1) The ALJ failed to consider that Plaintiff's frequency of treatment during the adjudicated period precluded full-time, competitive employment; and

(2) The ALJ erred by failing to analyze the opinions of Plaintiff's treating physician in accordance with the regulations, Agency policy, and Fifth Circuit precedent.

(Pl.'s Mem. at 1, ECF No. 12).

## DISCUSSION

## I.  STANDARD OF REVIEW

The standard of review for social security disability cases is limited to a determination of "(1) whether the Commissioner applied the proper legal standard, and (2) whether the Commissioner's decision is supported by substantial evidence." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A court reviewing the Commissioner's decision is not permitted to "re-weigh the evidence but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The court is not permitted to substitute its judgment for that of the Commissioner.  *Villa*, 895 F.2d at 1022.

## II.  THE ALJ'S DECISION

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether:

> (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work.

*Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quoting *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). "If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability." *Id.*

At step 1, the ALJ found that Lee meets the insured status requirements of the Social Security Act through December 31, 2019. At step 2, the ALJ determined that Lee has not engaged in substantial gainful activity since the alleged onset date. As for step 3, the ALJ found that Lee has the following severe impairments that limit her ability to perform basic work activities: conversion disorder, anxiety disorder, major depression disorder, post-traumatic stress disorder, chronic pain syndrome, bilateral occipital neuralgia, migraine, degenerative disc disease of the cervical spine, fibromyalgia, Ehlers-Danlos syndrome, convulsion/seizure disorder, neuropathy, irritable bowel syndrome, right rotator cuff tear with decreased abduction in the right shoulder, and interstitial cystitis. At step 4, the ALJ concluded that Lee does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Concerning step 5, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can no more than occasionally climb ramps and stairs. She can never

Case 1:19-cv-00678-LG-LGI   Document 19   Filed 03/17/21   Page 4 of 10

> climb ladders, ropes or scaffolds.  She can no more than occasionally
> balance, stoop, kneel, crouch and crawl.  She can never perform
> overhead reaching with the right upper extremity.  She can never work
> at unprotected heights or around dangerous moving mechanical parts.
> She can concentrate, persist and maintain pace in order to perform
> simple, routine, repetitive tasks.  She can have occasional interaction
> with supervisors, co-workers, and the general public.

(Admin. R. at 83, ECF No. 10).  The ALJ further found that Lee has no past

relevant work, and therefore transferability of job skills is not an issue.[1]  Lee is a

younger individual aged 18-49 on the disability onset date, and she has at least a

high school education and is able to communicate in English.  The ALJ concluded,

based on testimony given by a vocational expert, that Lee is capable of performing

the following jobs that exist in significant numbers in the national economy: (1)

cleaner or housekeeping, (2) merchandise marker, and (3) non-postal mail clerk.

Therefore, the ALJ determined that Lee has not been under a disability as defined

in the Social Security Act from March 1, 2016 through October 31, 2018, the date of

the ALJ's decision.

## III.  WHETHER THE ALJ GAVE PROPER CONSIDERATION TO LEE'S FREQUENCY OF TREATMENT

Lee claims that the ALJ erred by failing to take into consideration Lee's need

to be absent from work for medical appointments.  In support of this argument, Lee

notes that she had over ninety-six treatment visits during the twenty-eight-month

period at issue.  Lee therefore extrapolates that she needs to miss work over three

---

[1] Lee disagrees with this determination because she previously worked as a
phlebotomist, bank teller, and cashier, but she concedes that this alleged error does
not affect her appeal.

-4-

days each month for medical appointments.  At Lee's hearing before the ALJ, the vocational expert testified that a person who misses four days of work each month cannot maintain competitive employment.  He also testified that a person who is off task fifteen percent of the workday cannot maintain competitive employment.

In her Report and Recommendation, Judge Isaac found that Lee's argument concerning absences for medical treatment "rests on too speculative of a foundation."  (R&R at 6, ECF No. 17).  Judge Isaac noted that many of Lee's past appointments were for the purpose of eliminating other diagnoses before a definitive Ehler-Danlos diagnosis was made.  She also noted that some of the appointments were related to temporary pregnancy complications caused by Ehlers-Danlos syndrome.  Judge Isaac further concluded that the ALJ did not err in rejecting Dr. Bell's opinion that Lee would need to miss four days of work each month because Dr. Bell's opinions were unsupported and inconsistent with the record.  Judge Isaac explained that there is no evidence that Lee's appointments would require a full day's absence from work or that her appointments could not be scheduled around employment hours.

Lee objects to Judge Isaac's reasoning.  She argues that the ALJ did not mention the impact of her medical appointments, and the Court should not develop or rely on reasoning that was not included in the ALJ's opinion.  Lee also argues that it is improper to omit appointments for the purpose of arriving at a diagnosis and appointments related to her pregnancy because all of these appointments were ultimately caused by Ehler-Danlos.

SSR 96-8P provides that "[t]he RFC assessment must be based on all relevant evidence in the record, such as . . . [t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., *frequency of treatment, duration, disruption to routine, side effects of medication*) . . . ." Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996) (emphasis added). Therefore, the Fifth Circuit has held that "if an individual's medical treatment significantly interrupts the ability to perform a normal, eight-hour work day, then the ALJ must determine whether the effect of treatment precludes the claimant from engaging in gainful activity." *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

Although the ALJ in the present case did not specifically mention the frequency of Lee's medical appointments, she found that Dr. Bell's opinion that Lee would likely be absent from work four days per month was "largely not consistent with the overall record." (Admin. R. at 88). The ALJ explained that Lee's "physical examinations are generally within normal limits and imaging studies are largely unremarkable." (*Id.*) "The Secretary, not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case." *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015). The Court is not permitted to substitute its judgment or reweigh the evidence. Substantial evidence supports the ALJ's decision that it would not be necessary for Lee to miss four days of work each month.

## IV.  WHETHER THE ALJ GAVE PROPER CONSIDERATION TO THE OPINIONS OF LEE'S TREATING PHYSICIAN, DR. LYNN BELL

Lee argues that the ALJ erred in only giving partial weight to the opinions of her treating physician, Dr. Bell, while giving great weight to the opinions of another treating provider, Geralyn Datz, Ph.D., and a consultative examiner, Jack Hoover, M.D.  Dr. Bell opined in a September 2017 medical source statement that Lee can stand and sit no more than two hours in an eight-hour workday.  Dr. Bell also completed a July 2018 fibromyalgia medical source statement in which he opined that Lee can continuously sit and stand for no more than thirty minutes and can stand and walk for no more than two hours a day.  Dr. Bell stated that Lee would need to walk every thirty minutes in an eight-hour workday, miss four days of work each month, and take daily unscheduled breaks up to thirty minutes at a time.  The ALJ found that these opinions were not consistent with the overall record, because Lee's physical examinations are generally within normal limits and her imaging studies are largely unremarkable.  (Admin. R. at 87-88, ECF No. 10).

Dr. Datz performed a psychological pain interview and evaluation at the request of Dr. Bell.  In citing Dr. Datz' opinion that Lee is capable of work, the ALJ acknowledged that the ultimate issue of disability is reserved to the Commissioner.  However, the ALJ found that Dr. Datz' opinion is "largely supported by his examination of the claimant."  (Admin. R. at 89, ECF No. 10).  The ALJ explained, "Other than showing a depressed mood or anxious affect at times, [Lee's] mental status examinations are largely within normal limits."  (Admin. R. at 87, ECF No. 10).  Similarly, the ALJ found that Dr. Hoover's opinions were largely consistent

with the findings from Lee's physical examinations but "ultimately afforded [Lee] additional exertional limitation due to some abnormalities evident upon examination such as tenderness upon palpation and some evidence of a psychogenic component to [Lee's] pain." (*Id.*)

In her Report and Recommendation, Judge Isaac found that the ALJ was not required to perform a detailed analysis before rejecting Dr. Bell's opinions because "the record contains reliable medical evidence controverting Dr. Bell's conclusions." (R&R at 12, ECF No. 17). Judge Isaac further explained:

> The ALJ properly credited the limitations she found most supported by the record. The sole responsibility for determining a claimant's residual functional capacity rests with the ALJ. In the formulation of Plaintiff's residual functional capacity here, the ALJ gave a clearly articulated and a particularly well-reasoned analysis of Plaintiff's symptoms, including pain, and the extent to which these symptoms were consistent with the objective medical evidence.

(R&R at 12, ECF No. 17).

For claims filed before March 27, 2017, more weight is generally given to medical opinions given by the claimant's treating physicians than to the opinions of medical professionals who have not examined the claimant. *See* 20 C.F.R. § 404.1527(c)(1). If the court finds that a treating physician's opinion concerning the nature and severity of the claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the court will give the treating physician's opinions controlling weight. 20 C.F.R. § 404.1527(c)(2). Nevertheless, a treating physician's responses to a questionnaire are not entitled to

controlling weight unless accompanied by "explanatory notes" or "supporting objective tests and examinations." *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017). "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton*, 209 F.3d at 453.[2]  However, "[a]n ALJ can discount the weight of the opinions of treating physicians relative to the opinions of others if the treating physician's opinion and diagnosis is unsupported." *Hernandez v. Barnhart*, 202 F. App'x 681, 683 (5th Cir. 2006) (citing *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995)).

In the present case, the ALJ did not err in assigning only partial weight to the opinions of Dr. Bell.  The ALJ was not required to assign controlling weight to Dr. Bell's opinions because his opinions were set forth in a questionnaire format. The ALJ was not required to discuss the factors in 20 C.F.R. § 404.1527(c) because she found that Dr. Bell's opinions were in conflict with objective medical tests performed on Lee.  The Court is not permitted to reweigh the results of the objective tests against Dr. Bell's opinions but must defer to the conclusions of the ALJ.

## CONCLUSION

The ALJ's decision in this case was supported by substantial evidence, and the ALJ utilized the correct standards for assigning weight to the opinions of Lee's

---

[2] When the *Newton* case was decided, the factors were listed in subsection (d)(2) of 20 C.F.R. § 404.1527.  The factors are now located in subsection (c)(2).

treating physician and considering Lee's alleged need to be absent from work.  As a result, the Court finds that the Commissioner's decision should be affirmed.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the [17] Report and Recommendations of the Magistrate Judge is **ADOPTED** as the opinion of this Court.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the [13] Motion to Affirm the Commissioner's Decision is **GRANTED**.  The decision of the Commissioner is **AFFIRMED**, and this case is **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 17th day of March, 2021.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE